**MARLIN & SALTZMAN, LLP**
Christina A. Humphrey, Esq. (SBN 226326)
29229 Canwood Street, Suite 208
Agoura Hills, California 91301
Telephone:     (818) 991-8080
Facsimile:      (818) 991-8081
chumphrey@marlinsaltzman.com

Attorneys for Plaintiffs

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA - SACRAMENTO DIVISION

| | |
|---|---|
| SALVADOR ROBLES, individually and on behalf of others similarly situated, | **CASE NO. :** [CLASS ACTION] |
| Plaintiffs, | **COMPLAINT FOR:** |
| v. | 1. **DECLARATORY RELIEF;** |
| | 2. **REIMBURSEMENT OF BUSINESS EXPENSES;** |
| COMTRAK LOGISTICS, INC., a Delaware corporation; and DOES 1 through 10, inclusive, | 3. **RECOVERY OF UNPAID MINIMUM WAGES;** |
| | 4. **RECOVERY OF UNPAID WAGES FOR TIME SPENT DRIVING ACTUAL MILES;** |
| Defendants. | 5. **RECOVERY OF UNPAID WAGES AT THE AGREED RATE;** |
| | 6. **WAGES BELOW THE DESIGNATED RATE FOR ACTUAL MILES DRIVEN;** |
| | 7. **QUANTUM MERUIT/UNJUST ENRICHMENT;** |
| | 8. **FAILURE TO PROVIDE MEAL PERIODS;** |
| | 9. **FAILURE TO PROVIDE REST PERIODS;** |
| | 10. **FAILURE TO TIMELY FURNISH ACCURATE ITEMIZED WAGE STATEMENTS;** |
| | 11. **FOR WAITING TIME PENALTIES (CALIFORNIA LABOR CODE §§ 201-203);** |
| | 12. **VIOLATION OF CALIFORNIA BUSINESS AND PROFESSIONS CODE § 17200 ET. SEQ.** |
| | **JURY TRIAL DEMANDED** |

-1-

Plaintiff, SALVADOR ROBLES, on behalf of himself and others similarly situated (hereinafter "Robles" or "Plaintiff"), hereby files this Complaint against Defendants COMTRAK LOGISTICS, INC., a Delaware corporation, and DOES 1 to 10, inclusive (hereinafter collectively referred to as "Defendants" or "Comtrak").  Plaintiff is informed and believes, and on the basis of that information and belief alleges, as follows:

## I. NATURE OF THE CASE

1.      This action is brought by Plaintiff against Defendants in order to halt Defendants' unlawful practice of misclassifying their truck driver employees as "independent contractors."  By misclassifying the drivers as independent contractors, Defendants have sought to avoid various duties and obligations owed to employees under California's Labor Code and Industrial Welfare Commission for the Transportation Industry wage orders ("IWC Wage Order"), including: the duty to indemnify employees for all expenses and losses necessarily incurred in connection with their employment (Cal. Labor Code § 2802; IWC Wage Order No. 9, §§ 8-9.); the duty to pay California minimum wage for all hours worked (Cal. Labor Code §§ 1182.12, 1194, 1194.2, 1197; IWC Wage Order No. 9, § 4.); the duty to pay for all hours worked in accordance with the designated wage scale (Cal. Labor Code §§ 221, 223.); the duty to provide off-duty meal periods (Cal. Labor Code §§ 226.7, 512, 516; IWC Wage Order No. 9, § 11.); the duty to provide rest periods (Cal. Labor Code §§ 226.7, 512, 516; IWC Wage Order No. 9, § 12.); the duty to timely furnish accurate, itemized wage statements (Cal. Labor Code § 226.); the duty to pay wages due on termination (Cal. Labor Code §§ 201-203.); and other legal obligations.

2.      This Complaint asserts claims against Defendants for violations of the California Labor Code and IWC Wage Orders, the California Unfair Competition Law (Cal. *Bus. & Prof. Code* § 17200, *et seq.*, hereinafter referred to as the "UCL") and other equitable principles.

3.      This action is brought as a class action on behalf of all drivers who (a) who signed an independent contractor and/or equipment lease contract with Comtrak; (b) were assigned to a Comtrak operating terminal in California; and (c) were a resident of the State of California.

4.      A four year statute of limitation applies to the Unfair Competition Law claim; shorter periods may apply to other claims.

5.      California's overtime provisions as set forth in IWC Wage Order, number 9, section 3, do not apply to Drivers. But for all other purposes, Drivers are, in fact, non-exempt employees under California law entitled to the other protections afforded to non-exempt employees under the California Labor Code.

6.      Plaintiff is informed and believes that Defendant Comtrak is a major provider of full truckload transportation services, container storage deposits and logistic services. Comtrak reports being the largest intermodal company in the country. Comtrak has over 1,800 drivers in 24 different facilities across the United States.  Comtrak operates its trucking business throughout California. At all times mentioned in this Complaint, Defendants have employed hundreds of drivers at their Stockton, California and Ontario, California Terminals.

7.      At all relevant times herein, Defendants misclassified Drivers as independent contractors. Defendants retain and exercise pervasive control over their freight transport operations, including Drivers. By exercising such control over Drivers, Drivers are Defendants' employees under California law.

8.      As a result of Defendants misclassifying their Drivers as "independent contractors," Defendants have unlawfully failed to indemnify Drivers for employment-related expenses including, but not limited to, operational costs associated with the vehicles, including fuel, maintenance, repairs, quarterly inspections, tolls, ferry charges, late delivery fees, cargo loss or damage, licensing and liability and other insurance covering work place injuries. Defendants have taken deductions from Drivers' compensation to cover some or all of those expenses.

9.      As a result of Defendants misclassifying their Drivers as "independent contractors," Defendants unlawfully coerced Drivers into purchasing necessary equipment, materials and services, including but not limited to auto and cargo insurance, in violation of California Labor Code § 450 and the UCL (Cal. Bus. & Prof. Code § 17200, *et seq.*).

10.      As a result of Defendants misclassifying their Drivers as "independent contractors," Defendants have regularly failed to compensate drivers for all hours worked.

11.      At all relevant times herein, and with certain defined exceptions, Defendants' compensation schemes did not fairly compensate Drivers for all hours worked.  Defendants'

1  compensation schemes include mileage-based pay packages and/or activity-based pay packages.

2      12.    Defendants paid Drivers for driving time through "Mileage Pay" as a piece-rate

3  amount per mile driven.

4      13.    Drivers also received "Load Pay," which involved a piece rate for completing a

5  freight delivery.

6      14.    At certain times, Defendants also paid supplemental payments for certain defined

7  activities, including (a) Detention time (e.g., waiting for customers, but only after two hours of

8  waiting without pay and for no more than 8 hours); (b) Layover time (e.g. after waiting on

9  customers in excess of twelve (12) hours and for a period not to exceed twenty-four (24) hours or

10  if within 200 miles from pickup point, if wait exceeds 18 hours); (c) Loading/Unloading (e.g.,

11  physical handling of freight for customer); and (d) Driver Counts (upon verification, where

12  Drivers are present during loading and count the cartons loaded).

13      15.    Defendants did not, however, compensate Drivers for all remaining hours worked

14  each day.  Most significantly, Defendants did not compensate Drivers for the majority of their time

15  spent: (a) waiting on customers (e.g., the first 2 hours of Detention Time) (all such waiting time

16  may be referred to herein as "Customer Waiting Time"); or (b) waiting on dispatch (e.g., waiting

17  for instructions between assignments) (all such waiting time may be referred to herein as

18  "Dispatch Waiting Time").  Customer Waiting Time and Dispatch Waiting Time are collectively

19  referred to in this Complaint as "Waiting Time."

20      16.    Moreover, with limited defined exceptions, Defendants did not compensate Drivers

21  for other routine non-driving work tasks including, but not limited to, inspecting vehicles, fueling

22  vehicles, and completing daily paperwork (collectively referred to herein as "Common Unpaid

23  Tasks"). Other examples of "Common Unpaid Tasks" might include looking for empty trailers

24  and/or hooking/unhooking trailers and bobtailing.

25      17.    Furthermore, as a matter of policy and/or practice, Defendants did not pay Drivers

26  wages for time spent driving actual miles in excess of pre-determined average mileage estimates,

27  according to the Household Movers Guide, on select routes. Defendants' average mileage

28  estimates systematically denied Drivers compensation for actual miles driven on Company

recommended routes, above the abbreviated mileage estimates.  Moreover, Defendants permitted Drivers to take alternative routes on behalf of the Company and its customers, but regardless, Defendants did not compensate for time spent driving additional miles on alternative routes (including, without limitation, bobtail miles to a base operating center at the end of a shift).

18.     The failure to pay minimum wages to Drivers for hours worked violated California Labor Code §§ 1182.12, 1194 and 1197; IWC Wage Order, number 9, § 4; and the UCL.

19.     The failure to pay at least minimum wages to Drivers for each and every hour worked and the failure to pay for time spent driving in excess of mileage estimates in accordance with the designated rates, warrants liquidated damages under California Labor Code § 1194.2.

20.     Likewise, the failure to pay Drivers for each and every hour worked at designated rates violated California Labor Code §§ 221 and 223; IWC Wage Order, number 9; and the UCL.

21.     As a result of Defendants' misclassification of Drivers as independent contractors, Defendants have regularly:

    a.   Failed to provide Drivers with a first meal period of not less than thirty (30) minutes during which they are relieved of all duty before working more than five (5) hours;

    b.   Failed to provide Drivers with a second meal period of not less than thirty (30) minutes during which they are relieved of all duty before working more than ten (10) hours per day; and

    c.   Failed to pay Drivers one hour of pay at their regular rate of compensation for each workday that a meal period was not provided.

22.     As a result of Defendants misclassifying their Drivers as "independent contractors" and construction of pay packages as mileage and/or activity-based, Defendants have regularly:

    a.   Failed to provide paid rest periods of ten (10) minutes during which Drivers are relieved of all duty for each four (4) hours of work; and

    b.   Failed to pay Drivers one (1) hour of pay at their regular rate of compensation for each workday that a rest period was not permitted.

23.     The failure to permit and provide meal periods and rest periods as described herein

violates California Labor Code §§ 226.7, 512 and 516; IWC Wage Order , number 9, §§ 11 and 12; and the UCL.

24.     As a result of Defendants misclassifying their Drivers as "independent contractors," Defendants have also: (a) failed to record the actual hours worked by Drivers; (b) failed to itemize the total hours worked on wage statements furnished to Drivers; and (c) failed to properly maintain payroll records showing the actual hours worked and meal periods taken and missed each day by Drivers, all in violation of the California Labor Code §§ 226; IWC Wage Order, number 9, section 7; and the UCL.

25.     The failure to provide accurate hourly wage statements further warrants statutory penalties under California Labor Code § 226(e).

26.     As a result of Defendants misclassifying their Drivers as "independent contractors," Defendants have also compelled and coerced Drivers in the purchase of items of value in violation of California Labor Code § 450.

27.     As a result of Defendants misclassifying their Drivers as "independent contractors," Defendants have regularly failed to indemnify Drivers for all necessary expenditures and losses incurred by Drivers in direct consequence of the discharge of their duties and in obedience to the direction of Defendants. (Cal. Lab. Code § 2802.) Defendants unlawfully took deductions from Plaintiff's and the Plaintiff Class' compensation to cover certain ordinary business expenses of Defendants.

28.     The failure to indemnify Drivers from such losses and expenditures violates California Labor Code § 2802; IWC Wage Order, number 9, § 8, and the UCL and entitles Plaintiff and the Plaintiff Class to reimbursement of necessary expenditures, plus interest, reasonable costs and attorneys' fees and costs under California Labor Code § 2802(c).

29.     Plaintiff and the Plaintiff Class seek reimbursement for business expenses unlawfully deducted from their compensation according to proof, interest, penalties, attorneys' fees, and costs against Defendants in a sum provided by the California Labor Code and/or other statutes.

30.     In addition, as a result of Defendants' misclassification of their Drivers as

"independent contractors," Defendants have regularly failed to pay all compensation due and owing to Drivers whose employment terminated during the Class period, as required by California Labor Code §§ 201 and 202.  As a result, Defendants are liable for accrued wages due upon termination, and waiting time penalties owed in accordance with California Labor Code § 203.

31.     In this putative class action, Plaintiff, for himself and for all others similarly situated, seeks declaratory relief, damages and penalties for violations of the California Labor Code and applicable IWC Wage Orders, and restitution of all sums wrongfully obtained by Defendants in violation of the UCL.

## II. PARTIES

### A.  Plaintiffs

32.     Plaintiff, SALVADOR ROBLES, is an individual over the age of eighteen (18) and is now, and/or at all relevant times mentioned in this Complaint was, a resident and domiciliary of the State of California. Comtrak contracted with Robles as an independent contractor during the relevant time period from its terminal based in Stockton, California.  Robles currently resides in Riverside County, California.

33.     Plaintiff seeks damages, including but not limited to, wages, restitution for unpaid wages, penalties, reimbursement and other compensation from Defendants for the relevant time period because Defendants have:

   a.   Misclassified Plaintiff as an "independent contractor;"

   b.   Failed to reimburse Plaintiff for business expenses;

   c.   Coerced Plaintiff into purchasing equipment, materials and services;

   d.   Failed to timely pay Plaintiff minimum wages or designated rates for all hours worked and/or miles driven;

   e.   Failed to provide Plaintiff proper meal and rest periods or premium wages in lieu of the same;

   f.   Failed to pay for time spent on rest periods;

   g.   Failed to furnish Plaintiff with accurate itemized wage statements;

   h.   Failed to timely pay Plaintiff all wages due to him at the time of his termination

1   from employment; and/or

2       i.    Subjected Plaintiff to unfair business practices within the meaning of California

3           Business and Professions Code, section 17200 *et. seq.*

**B.  Defendant Comtrak Logistics, Inc.**

4

5   34.    Plaintiff is informed and believes, and based thereon alleges, that Defendant

6   Comtrak Logistics, Inc. is a Delaware corporation with its principal place of business at

7   3050 Highland Parkway, Suite 100, Downers Grove, Illinois 60515. Defendant maintains two

8   California Terminals, one at 4221 East Mariposa Road, Stockton, California 95215 ("Stockton

9   Terminal") and another at 3801 East Guasti Road, Ontario, California 91761 ("Ontario Terminal").

10  Plaintiff is further informed and believes that at all times relevant hereto, Defendant Comtrak has

11  transacted, and continues to transact, business throughout the State of California, including the

12  County of San Joaquin.

**C.  Defendants Does 1 To 10, Inclusive**

13

14  35.    DOES 1 to 10, inclusive, are now, and/or at all times mentioned in this Complaint

15  were, licensed to do business and/or actually doing business in the State of California. Plaintiff

16  does not know the true names or capacities, whether individual, partner, or corporate, of DOES 1

17  to 10, inclusive, and for that reason, DOES 1 to 10 are sued under such fictitious names pursuant

18  to California Code of Civil Procedure § 474. Plaintiff will seek leave of court to amend this

19  Complaint to allege such names and capacities as soon as they are ascertained. DOES 1 to 5 are

20  believed to be business entities who were also co-employers of the Plaintiff and the putative Class

21  herein.

**D.  All Defendants**

22

23  36.    Plaintiff is informed and believes, and based upon such information and belief

24  alleges, that the Defendants, and each of them, are now and/or at all times mentioned in this

25  Complaint were in some manner legally responsible for the events, happenings and circumstances

26  alleged in this Complaint.

27  37.    Plaintiff is further informed and believes, and based upon such information and

28  belief alleges, that at all times herein mentioned, all Defendants, and each of them, were and are

the agents, servants, employees, joint venturers, alter egos and/or partners of each of the other Defendants, and were, at all such times, acting within the course and scope of said employment and/or agency; furthermore, that each and every Defendant herein, while acting as a high corporate officer, director and/or managing agent, principal and/or employer, expressly directed, consented to, approved, affirmed and ratified each and every action taken by the other co-Defendants, as herein alleged and was responsible in whole or in part for the matters referred to herein.

38.     Plaintiff is further informed and believes, and based upon such information and belief alleges, that at all times herein mentioned, Defendants, and each of them, proximately caused Plaintiff, and all others similarly situated and the general public to be subjected to the unlawful practices, wrongs, complaints, injuries and/or damages alleged in this Complaint.

39.     Defendants, and each of them, are now and/or at all times mentioned in this Complaint were members of and/or engaged in a joint venture, partnership and common enterprise, and were acting within the course and scope of, and in pursuit of said joint venture, partnership and common enterprise and, as such were co-employers of Plaintiff and the putative Class herein.

40.     Defendants, and each of them, at all times mentioned in this Complaint, concurred with, contributed to, approved of, aided and abetted, condoned and/or otherwise ratified, the various acts and omissions of each and every one of the other Defendants in proximately causing the injuries and/or damages alleged in this Complaint.

### III. JURISDICTION AND VENUE

41.     The United States District Court for the Eastern District of California has jurisdiction pursuant to 28 U.S.C. §§ 1332(d)(2) and 1367(a), Plaintiff is informed and believes that the aggregate amount in controversy in this action exceeds $5 million, that there are more than 100 class members, and that at least one Defendant is a citizen of a different state than Plaintiff.

42.     Venue for this matter properly lies in the Eastern District of California under 28 U.S.C. § 1391 because Defendants are subject to personal jurisdiction in this judicial district and the conduct described herein occurred in whole or in part in this judicial district as directed toward Plaintiff and the members of the below-described classes and/or subclasses.

///

# IV. BACKGROUND

43.     Comtrak provides transportation services throughout California. Comtrak drivers fall into two categories; they are either Owner Operators, typically labeled "independent contractors," or Company Drivers, typically labeled "employees." Company Drivers have the ability to become Owner Operators through Comtrak's third-party Lease-to-Purchase Program. Owner Operators and Lease-to-Purchase Drivers are compensated in the same manner and both are misclassified as independent contractors.

44.     Drivers at Comtrak are generally responsible for driving trucks and delivering freight from one point to another. Their work tasks may include, among others, locating, inspecting, fueling and maintaining vehicles; hooking up and unhooking trailers; verifying loads; planning trips; completing daily logs, shipping documents and other paperwork; using the onboard computer system; and waiting for customers and dispatch.

45.     Plaintiff Robles worked as a Driver at Defendants' Stockton Terminal. He was misclassified by Defendants as an "independent contractor."  He was coerced into purchasing necessary equipment; paid on a piece-rate basis for mileage and by the load; was not compensated for all hours he worked or for all miles he drove; was not properly compensated or given "duty free" meal and rest breaks; was not reimbursed for all business expenses; was not provided accurate wage statements; and was not paid all compensation upon termination.

46.     Plaintiff Robles later worked as a Company Driver/Employee for Defendants.  His job duties were substantially similar as a Company Driver/Employee as they were during the time he drove for Defendants and was misclassified as an independent contractor.

A.  **Comtrak's Misclassification of Employee Drivers**

47.     Comtrak misclassifies Drivers: Drivers are Comtrak's employees, not independent contractors.

48.     Comtrak retains and exercises significant control over the details of Drivers' work.

49.     Drivers are integral to the operation of Comtrak's core business; they are hired to pick up, transport and deliver freight in California based on times, locations and for amounts determined by Comtrak.

50.     Upon hiring, Drivers are provided with Comtrak's Policies and Procedures Handbook. The Policies and Procedures Handbook details various rules by which Comtrak's drivers must abide.  Additionally, Drivers are required to attend quarterly work meetings discussing Comtrak's policies and procedures. When Drivers do not follow Comtrak's policies and procedures, they are subject to discipline.

51.     Comtrak unilaterally sets the prices charged to its customers for services rendered by Drivers, as well as the compensation rates paid to Drivers. Drivers have no control over the rates charged to Comtrak's customers, nor do they have control over their own compensation rates.

52.     Comtrak also controls Drivers' delivery schedules. Comtrak routes the number and order of all delivery stops and schedules the times for each pick up and delivery.  If a Driver is running late and is unable to arrive at the next appointment at the scheduled time, the Driver is required to send Comtrak a message through communication equipment, which Comtrak requires Drivers install in their trucks.

53.     Comtrak maintains GPS trackers on each truck. Using the GPS equipment, Comtrak keeps track of the Drivers every location.  If a Driver is stationary too long in a single location, Comtrak will contact the Driver through the communication equipment and ask the Driver why they are stopped and what is taking them so long.

54.     Comtrak disciplines Drivers who arrive late to a delivery stop.

55.     Comtrak further maintains control over Drivers' helpers and/or substitute drivers. Helpers and substitute drivers must submit to Comtrak's "Driver Qualification Policy." Comtrak's qualification policy requires Drivers' helpers and/or substitute drivers to complete a Comtrak application, the same application completed by both owner operator and employee applicants. Further, Comtrak supervises the conduct of Drivers' helpers or substitute drivers and retains the ability to terminate Drivers based on "improper conduct."

56.     As noted above, Comtrak requires Drivers to install equipment both on their trucks and inside their cabs.  Comtrak also prohibits Drivers from running loads for other companies and requires that Drivers affix and display Comtrak's logo on their trucks.

57.     Comtrak requires Drivers to return to the yard at the end of each shift and turn in a

"Trip Pack," which includes the itinerary of Drivers' stops and the arrival and departure times of Drivers' deliveries.

58.     Despite Comtrak's pervasive control over all aspects of its transportation services and Drivers, Comtrak classifies Drivers as independent contractors.

59.     Comtrak may terminate Drivers at any time with or without cause.

60.     Comtrak's Drivers are required to pay many employment-related expenses including, but not limited to, fuel, maintenance, repairs, quarterly inspections, tolls, ferry charges, late delivery fees, cargo loss or damage, and licensing; and liability and other insurance covering work place injuries.

61.     Fuel costs for Drivers are significant. Because Drivers typically cannot cover this expense, Comtrak provides Drivers with a fuel credit card.  Comtrak then deducts the cost of fuel from Drivers' weekly paychecks.

62.     Comtrak fronts a number of other employment–related expenses for Drivers and then deducts those costs from Drivers' paychecks. These may include, among others, money advances, fines and penalties, credit union charges, carrier tags, late delivery fees, express mailing fees, tires, medical and first aid, repairs and weight (overload) tickets.

63.     Comtrak also may carry Drivers' auto liability, property damage and cargo insurance policies. The costs of these policies may also be deducted from Drivers' pay.

64.     Comtrak issues paychecks to Drivers, as individuals, not as business entities. Comtrak makes deductions from Drivers' paychecks for Drivers' operational and other costs.

65.     Plaintiff Robles received weekly paychecks from Comtrak. Operational expenses and costs were deducted from his pay. Robles' paychecks were issued to him, as an individual.

66.     Comtrak provides freight transportation services to its customers. Drivers pick up, transport and deliver freight to Comtrak's customers in California.  Drivers, therefore perform Comtrak's regular and primary business.

67.     While Comtrak is able to negotiate many of its own rates, Drivers typically are not. Drivers are bound by the load, mileage and other rates unilaterally set by Comtrak.

68.     Drivers sign independent contractor agreements with Comtrak that label Drivers as

"independent contractors." However, despite this label, Comtrak treats Drivers like employees. Drivers are paid on a regular schedule; Drivers are required to affix Comtrak's logo on their trucks; Comtrak typically determines Drivers' routes and the order in which deliveries are made; Drivers typically must notify Dispatch when they running late on a delivery and Dispatch monitors Drivers' location, contacting Drivers if they are stationary too long.

**B.  Comtrak Deducts Drivers' Business Expenses from Drivers' Paychecks**

69.     At all times relevant hereto, California Labor Code § 2802 required employers to indemnify their employees for "all necessary expenditures or losses incurred by the employee in direct consequence of the discharge of his or her duties, or of his or her obedience to the directions of the employer…"

70.     IWC Wage Order, number 9, § 8 prohibits employers from making any deduction from the wage of an employee for any unintentional cash shortage, breakage, or loss of equipment. IWC Wage Order, number 9, § 9 requires employers to maintain tools and equipment required by the employer or that are necessary to the performance of the job.

71.     Comtrak takes deductions from Drivers' weekly paychecks for work-related expenditures or losses incurred by Drivers in direct consequence of Drivers' pick up, transport and delivery of freight in California based on times, locations and for amounts determined by Comtrak.

72.     Comtrak requires Drivers to install communication and other equipment on Drivers' trucks and holds Drivers responsible for repairs and replacement costs.

**C.  Comtrak's Failure to Pay Minimum Wages and Designated Rates**

73.     IWC Wage Order, number 9 defines "hours worked" to mean "the time during which an employee is subject to the control of an employer, and includes all the time the employee is suffered or permitted to work, whether or not required to do so."

74.     As a result of Comtrak misclassifying their Drivers as "independent contractors," Comtrak suffered or permitted Drivers to work portions of the day for which Defendants failed to compensate them. Drivers were subject to Comtrak's control during this time.

75.     California Labor Code § 1182.12 and IWC Wage Order, number 9, section 4 provide that on and after January 1, 2008, the minimum wage shall be not less than eight dollars

1  ($8.00) per hour.

2  76.  California Labor Code § 1194(a) provides in relevant part: "Notwithstanding any

3  agreement to work for a lesser wage, any employee receiving less than the legal minimum wage []

4  is entitled to recover in a civil action the unpaid balance of the full amount of this minimum wage

5  [], including interest thereon, reasonable attorney's fees, and costs of suit."

6  77.  California Labor Code § 1194.2(a) provides in relevant part: "In any action under

7  Section 1193.6 or Section 1194 to recover wages because of the payment of a wage less than the

8  minimum wage fixed by an order of the commission, an employee shall be entitled to recover

9  liquidated damages in an amount equal to the wages unlawfully unpaid and interest thereon."

10  78.  California Labor Code § 1197 provides: "The minimum wage for employees fixed

11  by the commission is the minimum wage to be paid to employees, and the payment of a less wage

12  than the minimum so fixed is unlawful."

13  79.  Plaintiff is informed and believes, and therefore alleges, that Comtrak's

14  compensation schemes do not fairly compensate Drivers for all hours spent performing their job

15  duties.

16  80.  Among other things, Comtrak exercises considerable control over employees

17  during Waiting Time. For example, during Customer Waiting Time, Drivers may wait at or near

18  customer facilities in advance of an appointment for delivery or pickup, and/or they may wait at or

19  near designated facilities for shipping or receiving personnel to accept and/or provide paperwork,

20  and/or they may wait for a customer to commence loading or unloading a shipment. During

21  Dispatch Waiting Time, Drivers may wait for their dispatchers to provide in-vehicle instructions

22  regarding a work assignment, and/or they may wait on-call between assignments for dispatch to

23  provide further directions while they are on the road, and/or they may wait while monitoring the

24  onboard computer system, while staying near their tractors/trailers, while being available to

25  promptly accept reassignment, and without using the tractors/trailers for personal errands.

26  Comtrak regularly monitors the trucks through its GPS equipment which Comtrak requires Drivers

27  to install on their trucks.

28  81.  Furthermore, as a matter of policy and/or practice, Comtrak only pays Drivers for

-14-

driving time based on computerized estimates of the shortage mileage for routes (i.e., based on the Household Movers Guide, or "HHMG" and measured from central post office to central post office), without compensating Drivers for the time spent driving in excess of the pre-determined mileage estimates.  Defendants' mileage estimates based on the HHMG shortest routes ("HHMG Shortest Route Estimates") are routinely less than the actual miles driven by Drivers in route, and less than the practical miles warranted to make deliveries for Comtrak customers. In any event, Comtrak's Mileage Pay scheme simply did not compensate Drivers for all of the actual miles driven (i.e., miles that Comtrak calls bobtail miles to home terminals at the end of shifts). As a result, Comtrak systematically failed to pay Drivers for hours spent driving in excess of the pre-determined mileage estimates.

82.     The failure to pay at least minimum wages to Drivers for each and every hour worked violates California Labor Code §§ 1182.11-1182.12, 1194, 1194.2, and 1197; IWC Wage Order, number 9, § 4; and the UCL.

83.     The failure to pay designated wages to Drivers for each and every hour worked violates California Labor Code §§ 221 and 223; IWC Wage Order, number 9; and the UCL.

**D.  Comtrak's Failure to Provide Meal Periods**

84.     At all times relevant hereto, California Labor Code §§ 226.7 and 512 and IWC Wage Order, number 9, section 11 required employers to provide employees with a first meal period of not less than thirty (30) minutes during which they are relieved of all duty before working more than five (5) hours and a second meal period of not less than thirty (30) minutes during which they are relieved of all duty before working more than ten (10) hours per day. Comtrak further failed to record Drivers' meal periods.

85.     At all times relevant hereto, California Labor Code § 226.7(b) and IWC Wage Order number 9, section 11 required employers to pay one hour of additional pay at the regular rate of compensation for each employee and each workday that a proper meal period is not provided.

86.     Comtrak failed to schedule breaks, keep records of break times and did not inform Drivers of their right to a thirty (30) minute uninterrupted meal break under California law.

87.     As a result of Comtrak misclassifying their Drivers as "independent contractors," Comtrak regularly failed to provide a timely thirty (30) minute off-duty meal period to Drivers who worked more than five (5) hours in a day.

88.     As a result of Comtrak misclassifying their Drivers as "independent contractors," Comtrak regularly failed to provide a second timely thirty (30)  minute meal period to Drivers who worked more than ten (10) hours in a day.

**E.  Comtrak's Failure to Permit Rest Periods**

89.     At all times relevant hereto, California Labor Code § 226.7 and IWC Wage Order, number 9, section 12 required employers to authorize, permit, and provide a ten (10) minute paid rest for each four (4) hours of work, during which employees are relieved of all duty.

90.     At all times relevant hereto, California Labor Code § 226.7(b) and IWC Wage Order, number 9, section 12 required employers to pay one hour of additional pay at the regular rate of compensation for each employee and each workday that a proper rest period is not provided.

91.     As a result of Comtrak misclassifying their Drivers as "independent contractors," Comtrak regularly failed to provide a ten (10) minute paid rest period for each four (4) hours of work, during which Drivers were relieved of all duty.

92.     As a result of Comtrak misclassifying their Drivers as "independent contractors" and Comtrak's activity-based and mileage-based compensation scheme, Defendants failed to compensate Drivers for break time when breaks were taken. Defendants' compensation scheme did not permit paid rest breaks as mandated by California law.

93.     As a result of Comtrak misclassifying their Drivers as "independent contractors," Comtrak regularly failed to pay one hour of additional pay at the regular rate of compensation for each Driver and each workday that a proper rest period was not provided.

**F.  Comtrak's Failure to Maintain Adequate Employment Records and Failure to Provide Accurate Itemized Wage Statements**

94.     At all times relevant hereto, California Labor Code § 226 and IWC Wage Order, number 9, section 7 required employers to maintain adequate employment records and provide employees with accurate itemized wage statements showing gross wages, total hours worked, all

1   applicable hourly rates worked during each pay period, the corresponding number of hours worked

2   at each hourly rate, and meal breaks taken.

3        95.    Wage statements provided to Drivers by Comtrak, do not show all wages earned,

4   all hours worked, or all applicable rates, in violation of the California Labor Code § 226, IWC

5   Wage Order number 9, section 7, and the UCL.

6        96.    Moreover, Defendants did not maintain adequate records of all wages earned, hours

7   worked and meal breaks taken.

8   **G.  Comtrak's Failure to Pay Wages Due on Termination**

9        97.    At all times relevant hereto, California Labor Code § 201 required an employer that

10  discharges an employee to pay compensation due and owing to said employee immediately upon

11  discharge. California Labor Code § 202 requires an employer to pay an employee who quits any

12  compensation due and owing to said employee within seventy-two (72) hours of an employee's

13  resignation. California Labor Code § 203 provides that if an employer willfully fails to pay

14  compensation promptly upon discharge or resignation, as required under §§ 201 and 202, then the

15  employer is liable for waiting time penalties in the form of continued compensation for up to thirty

16  (30) work days.

17       98.    Comtrak willfully and knowingly failed to pay Drivers, upon termination of

18  employment, all accrued compensation including repayment of all unlawful deductions from

19  wages, payment of minimum wage compensation and missed meal and rest periods compensation.

20       99.    Comtrak further willfully failed to timely pay all compensation owed to Drivers

21  upon termination, including, but not limited to, wages owed to Plaintiffs for performing the

22  Unpaid Tasks. As a result, Defendants are liable both for accrued wages due at termination and for

23  waiting time penalties.

### V. CLASS ACTION ALLEGATIONS

25       100.   Pursuant to California Code of Civil Procedure § 382, this action is brought and

26  may be properly maintained as a class action. This action satisfies the numerosity, ascertainability,

27  commonality, typicality, adequacy, predominance, and superiority requirements of the California

28  Class Action Statute.

**A.  Class Definition**

101.    Plaintiff brings this suit as a class action on behalf of the Class of individuals defined as follows:

   a.   All current and former California-based truck drivers for Comtrak Logistics Inc., at any time from January 2009, to the present (the "Class Period") and who were classified by Defendants as independent contractors ("Drivers").

   b.   "California-based" refers to Drivers:

      i.   who had a residential address in California at any time during the Class Period; and/or

      ii.  who were assigned or associated with a terminal in California at any time during the Class Period.

   c.   The phrase "assigned or associated with a terminal" includes any and all Drivers listed in Comtrak's database in connection with a terminal.

102.    Plaintiff further seeks to establish the following subclass:

   a.   The Former Driver Subclass, which is defined as all Drivers who are no longer employed by Defendants herein;

**B.  Numerosity**

103.    Plaintiff is informed and believes, and based on such information and belief alleges, that during the class period, hundreds of putative class members have worked for Defendants as independent contractors.  Because so many persons have worked for Defendants in this capacity, the putative members of the Plaintiff Class are so numerous that joinder of all members is impossible and/or impracticable. While the exact number and specific identities of the member class is presently unknown to Plaintiff, this information may readily be ascertained through inspection of Defendants' business records.

**C.  Commonality**

104.    Plaintiff is informed and believes, and based on such information and belief alleges, that numerous questions of law and/or fact are common to all members of the Class including, without limitation:

a.  Whether the Drivers served Defendants as employees rather than independent contractors under California law;

b.  Whether, as a result of Defendants' misclassification of Drivers as "independent contractors," Defendants failed to indemnify Drivers for their necessarily incurred employment-related expenses and losses, in violation of California Labor Code § 2802;

c.  Whether, as a result of Defendants' misclassification of Drivers as "independent contractors," Defendants made deductions from the compensation paid to Drivers in violation of California law;

d.  Whether, as a result of Defendants' misclassification of Drivers as "independent contractors," Defendants coerced or compelled Drivers to the purchase or lease of communication equipment, electronic message services, GPS equipment and other items in violation of California Labor Code § 450;

e.  Whether, as a result of Defendants' misclassification of Drivers as "independent contractors," Defendants required, encouraged, suffered, or permitted Drivers to perform certain work-related duties without compensation equal to at least the California minimum wage;

f.  Whether, as a result of Defendants' misclassification of Drivers as "independent contractors,"  Defendants violated California Labor Code §§ 1182.11 and 1194 and IWC Wage Order, number 9, section 4 and by failing to pay Drivers minimum wage compensation for all hours worked;

g.  Whether, as a result of Defendants' misclassification of Drivers as "independent contractors," Defendants violated California Labor Code §§ 221 and 223 by failing to pay Drivers at the designated rate for all hours worked;

h.  Whether, as a result of Defendants' misclassification of Drivers as "independent contractors," Defendants failed to provide adequate off-duty meal periods and meal period compensation, in violation of California Labor Code §§ 226.7, 512 and 516 and IWC Wage Order, number 9 § 11;

i.  Whether, as a result of Defendants' misclassification of Drivers as "independent contractors," Defendants failed to provide rest periods and rest period compensation, in violation of California Labor Code §§ 226.7, 512 and 516 and IWC Wage Order, number 9 § 12;

j.  Whether, as a result of Defendants' misclassification of Drivers as "independent contractors," Defendants knowingly and intentionally failed to provide Drivers with accurate, itemized statements, as required by California Labor Code § 226 and IWC Wage Order, number 9 § 7;

k.  Whether, as a result of Defendants' misclassification of Drivers as "independent contractors," Defendants violated California Labor Code § 1174 and IWC Wage Order, number 9 § 7 by failing to maintain documentation of the actual hours worked each day by Drivers;

l.  Whether, as a result of Defendants' misclassification of Drivers as "independent contractors," Defendants violated California Labor Code § 1174 and IWC Wage Order, number 9, § 7 by failing to document meal periods;

m.  Whether, as a result of Defendants' misclassification of Drivers as "independent contractors," Defendants violated California Labor Code § 201 and 202, by failing, upon termination, to timely pay Drivers all wages due;

n.  Whether Defendants' conduct constitutes unlawful, unfair and/or fraudulent business practices under the UCL;

o.  Whether Class members are entitled to compensatory damages requiring Defendants to pay Class members for unpaid minimum wages and wages at designated rates;

p.  Whether Class members are entitled to liquidated damages from Defendants for unpaid minimum wages under California Labor Code § 1194.2;

q.  Whether Class members are entitled to restitution of minimum wages, or wages at the designated rates;

r.  Whether Class members are entitled to meal period wages;

s.   Whether Class members are entitled to restitution of meal period wages;

t.   Whether Class members are entitled to rest period wages;

u.    Whether Class members are entitled to restitution for rest period wages;

v.   Whether Defendants are liable for damages pursuant to California Labor Code §§ 450 and 2802;

w.   Whether Defendants are liable for prejudgment interest;

x.   Whether Defendants are liable for attorneys' fees and costs; and

y.   Whether Defendants are liable to Class members for statutory penalties for unpaid wages (*e.g.* under California Labor Code §§ 203 and 226(e)).

**D.   Typicality**

105.   Plaintiff is informed and believes, and based on such information and belief alleges, that Plaintiff's claims are typical of the claims of all members of the Class whom he seeks to represent. Defendants treated both Plaintiff and all members of the Class in a virtually identical manner with respect to the violations of law asserted herein. These violations of law arise out of Defendants' common course of conduct in *inter alia* (a) misclassifying Drivers as independent contractors; (b) requiring members of the Class to work hours for which they were not properly compensated in terms of basic minimum wages and/or designated rates; (c) requiring members of the Class to forego duty free meal breaks and paid rest breaks to which they were entitled; (d) receive inaccurate wage statements; (e) coerced Drivers into purchasing necessary equipment; (f) failed to reimburse Drivers for business expenses; and (g) endure unfair business practices within the meaning of the UCL.

**E.   Adequacy of Representation**

106.   Plaintiff is informed and believes, and based on such information and belief alleges, that Plaintiff will fairly and adequately protect the interests of the members of the Class he seeks to represent. Plaintiff is an adequate representative of the Class because Plaintiff is also a member of the Subclass and because Plaintiff's interests do not conflict with the interests of the members of the Class and Subclasses they seek to represent. Plaintiff has retained counsel competent and experienced in the prosecution of complex class actions and Plaintiff and his counsel intend to

1    prosecute this action vigorously for the benefit of the Class. Plaintiff and his counsel will fairly

2    and adequately protect the interests of the Class members.

3    **F. Superiority**

4         107.    Plaintiff is informed and believes, and based on such information and belief alleges,

5    that this action is properly brought as a class action, not only because the prerequisites of the

6    California Class Action Statute and common law related thereto are satisfied (as outlined above),

7    but also because of the following:

8         a.    The prosecution of separate actions by or against individual members of the Class

9           would create risk if inconsistent or varying adjudications with respect to individual

10           members of the Class which would establish incompatible standards for conduct for

11           the party opposing the Class;

12         b.    Adjudications with respect to individual members of the Class would, as a practical

13           matter, be dispositive of the interests of the other members not pursuant to

14           California Labor Code §§ 1182.12, 1194, 1197, and the applicable parties to the

15           adjudications or substantially impair or impede their ability to protect their interests;

16         c.    Defendants have acted or refused to act on grounds generally applicable to all

17           members if the Class, making declaratory relief appropriate with respect to all of

18           the Class;

19         d.    Questions of law or fact common to the members of the Class predominate over

20           any questions affecting only individual members; and

21         e.    Class treatment is superior to other available methods for the fair and efficient

22           adjudication of the controversy.

23             **FIRST CAUSE OF ACTION**

24             **DECLARATORY RELIEF**

25         **[Against Defendant Comtrak and Doe Defendants]**

26         108.    Plaintiff hereby incorporates by reference each and every one of the allegations

27    contained in the preceding paragraphs as if the same were fully set forth herein.

28         109.    An actual controversy has arisen between Plaintiff and the Plaintiff Class, on the

one hand, and Defendants on the other, relating to the following matters:

a. Whether Defendants misclassified Plaintiff and the Plaintiff Class as "independent contractors" when, in fact, Drivers were Defendants' employees;

110. Plaintiff and the Plaintiff Class further seek declaratory relief against all Defendants herein and in Plaintiffs' favor, which declares Defendants' practices to be unlawful, and which provides for recovery of all sums determined by this Court to be owed by Defendants, and each of them, to Plaintiff and the Plaintiff Class.

## SECOND CAUSE OF ACTION

### REIMBURSEMENT OF BUSINESS EXPENSES

**[Against Defendant Comtrak and Doe Defendants]**

111. Plaintiff hereby incorporates by reference each and every one of the allegations contained in the preceding paragraphs as if the same were fully set forth herein.

112. California Labor Code § 2802(a) provides: "An employer shall indemnify his or her employee for all necessary expenditures or losses incurred by the employee in direct consequence of the discharge of his or her duties, or of his or her obedience to the directions of the employer…."

113. For the three (3) years preceding the filing of this lawsuit, Plaintiff and members of the putative Class have been employed by Defendants within the State of California. Defendants are required to indemnify and reimburse Plaintiff and members of the putative Class for all expenditures or losses incurred in direct consequence of the discharge of their duties, but failed to do so as required by the laws and regulations of the State of California. Labor Code § 2802 prohibits employers from passing the ordinary business expenses and losses of the employer onto the employee.

114. Defendants have violated California Labor Code § 2802 and IWC Wage Order, number 9, section 8 by unlawfully taking deductions from Plaintiff's and the Plaintiff Class' compensation to cover certain ordinary business expenses of Defendants including, but not limited to, costs of operating and repairing necessary equipment, overweight tickets and other fines, claims for loss or damaged cargo, property damage and bodily injury claims, fuel and "service claims" granted to customers.

115.    Because Defendants took unlawful deductions from Plaintiff's and the Plaintiff Class' compensation, they are liable to Plaintiff and the Plaintiff Class for the compensation that should have been paid but for the unlawful deductions, pursuant to California Labor Code, sections 221, 223, and 400-410, and IWC Wage Order, number 9 § 8.

116.    By unlawfully deducting wages and failing to pay Plaintiff and the Plaintiff Class, Defendants are also liable for penalties, reasonable attorneys' fees, and costs under California Labor Code §§ 218.5 and 1194.

117.    Plaintiff and the Plaintiff Class seek reimbursement for business expenses unlawfully deducted from their compensation according to proof, interest, penalties, attorneys' fees, and costs against Defendants in a sum provided by the California Labor Code and/or other statutes.

118.    Plaintiff and the other Class members also request relief as described below.

### THIRD CAUSE OF ACTION

### FAILURE TO PAY MINIMUM WAGE FOR ALL HOURS WORKED

### [Against Defendant Comtrak and Doe Defendants]

119.    Plaintiff hereby incorporates by reference each and every one of the allegations contained in the preceding paragraphs as if the same were fully set forth herein.

120.    Pursuant to California Labor Code §§ 1182.12, 1194 and 1197 and IWC Wage Order, number 9 § 4, Plaintiff may bring a civil action for unpaid minimum wages directly against an employer.

121.    At all relevant times herein, California Labor Code §§ 1182.12, 1194 and 1197 and IWC Wage Order, number 9 § 4, provided for payment of state-law minimum wages at the rate described therein.

122.    Defendants' compensation scheme did not fairly compensate Drivers for waiting time, or other activities including but not limited to pre and post trip inspections, fueling trucks, filling out paperwork, and waiting for dispatch.  As a result, Defendants suffered or permitted Plaintiff and the Plaintiff Class to perform work without compensation, while subject to Defendants' control.

123.    By failing to maintain adequate time records as required by California Labor Code § 1174(d) and IWC Wage Order, number 9 § 7(A), Defendants have made it difficult to calculate the minimum wage compensation due Plaintiff and the Plaintiff Class.

124.    Defendants owe Plaintiff and the Plaintiff Class minimum wages and liquidated damages pursuant to California Labor Code §§ 1182.12, 1194, 1194.2 and 1197, IWC Wage Order, number 9, section 4 due in amounts to be determined at trial during the three (3) years prior to the filing of this Complaint.

125.    Plaintiff and the Plaintiff Class request payment of unpaid minimum wages due in amounts to be determined at trial, interest, attorneys' fees and costs, against Defendants in a sum as provided by the California Labor Code and/or other statutes.

126.    Plaintiff and the other Class members also request relief as described below.

## FOURTH CAUSE OF ACTION

### FAILURE TO PAY MINIMUM WAGE FOR TIME SPENT DRIVING ACTUAL MILES

### [Against Defendant Comtrak and Doe Defendants]

127.    Plaintiff hereby incorporates by reference each and every one of the allegations contained in the preceding paragraphs as if the same were fully set forth herein.

128.    Pursuant to California Labor Code §§ 1182.12, 1194 and 1197 and IWC Wage Order, number 9 § 4, Plaintiff may bring a civil action for unpaid minimum wages directly against an employer.

129.    At all relevant times herein, the applicable California Labor Code sections and IWC Wage Order referenced herein applied to Plaintiff and the Plaintiff Class.

130.    At all relevant times herein, California Labor Code §§ 1182.12, 1194 and 1197 and IWC Wage Order, number 9 § 4, provided for payment of state-law minimum wages at the rate described therein.

131.    Defendants engaged Class members to drive trucks in the course and scope of employment. Defendants' compensation scheme included, among others, a mileage-based system. However, Defendants' compensation schemes only covered wages for a portion of the miles actually driven in route based on the HHMG Shortest Route Estimates. As a result, Defendants

1   failed to pay wages to Class members for the time they actually spent driving actual miles.

2        132.    With respect to all actual miles actually driven, Defendants have intentionally and

3   improperly failed to make payment of minimum wages to Plaintiff and the Plaintiff Class in

4   violation of the California Labor Code, applicable regulations and IWC Wage Order, number 9.

5        133.    Defendants owe Plaintiff and each putative Class member minimum wages and

6   liquidated damages pursuant to California Labor Code §§ 1182.12, 1194 and 1197 and IWC Wage

7   Order, number 9, section 4 due in amounts to be determined at trial during the three (3) years prior

8   to the filing of this Complaint.

9        134.    Plaintiff and the other Class members request payment of unpaid minimum wages

10   due in amounts to be determined at trial, plus interest, attorneys' fees and costs, against

11   Defendants in a sum as provided by the California Labor Code and/or other statutes.

12        135.    Plaintiff and the other Class members also request relief as described below.

13                          **FIFTH CAUSE OF ACTION**

14   **PAYMENT OF WAGE BELOW DESIGNATED RATE FOR ALL HOURS WORKED**

15                   **[Against Defendant Comtrak and Doe Defendants]**

16        136.    Plaintiff hereby incorporates by reference each and every one of the allegations

17   contained in the preceding paragraphs as if the same were fully set forth herein.

18        137.    At all relevant times herein, the applicable California Labor Code sections

19   referenced herein applied to Drivers employed with Defendants.

20        138.    At all relevant times herein, California Labor Code § 223 provided "[w]here any

21   statute or contract requires an employer to maintain the designated wage scale, it shall be unlawful

22   to secretly pay a lower wage while purporting to pay the wage designated by statute or by contract."

23        139.    Defendants' compensation scheme purported to compensate Plaintiff and the

24   Plaintiff Class for all hours worked.  In reality, Defendants suffered or permitted Plaintiff and the

25   Plaintiff Class to work portions of their day without compensation, while subject to Defendants'

26   control.

27        140.    California law requires employers to pay wages in accordance with a designated

28   wage scale.  Nevertheless, Defendants paid less than minimum wages and less than the agreed

1    upon compensation owed to Plaintiff and the Plaintiff Class, while purporting to pay the

2    designated wage scale. As a result, Defendants' conduct violates California Labor Code §§ 221

3    and 223.

4         141.    Defendants owed and still owe Plaintiff and the Plaintiff Class wages pursuant to

5    the California Labor Code in amounts to be determined at trial for the hours worked during the

6    relevant time period.

7         142.    Plaintiff and the other Class members request payment of unpaid wages below the

8    designated rate in amounts to be determined at trial, plus interest, attorneys' fees and costs, against

9    Defendants in a sum as provided by the Labor Code and/or other statutes.

10        143.    Plaintiff and the other Class members also request relief as described below.

## SIXTH CAUSE OF ACTION

### PAYMENT OF WAGE BELOW DESIGNATED RATE

### FOR TIME SPENT DRIVING ACTUAL MILES

### [Against Defendant Comtrak and Doe Defendants]

15        144.    Plaintiff hereby incorporates by reference each and every one of the allegations

16   contained in the preceding paragraphs as if the same were fully set forth herein.

17        145.    At all relevant times herein, the applicable California Labor Code sections

18   referenced herein applied to Plaintiff and the Plaintiff Class.

19        146.    Pursuant to California Labor Code § 223, it is unlawful for Defendants to purport to

20   pay the wage designated by statute or by contract while actually paying a lower wage.

21        147.    Defendants engaged Class members to drive trucks in the course and scope of

22   employment. Defendants' compensation scheme included, among others, a mileage-based system.

23   However, instead of compensating Plaintiff and the Plaintiff Class for all miles actually driven,

24   Defendants only paid wages based on the HHMG Shortest Route Estimates. Consequently,

25   Defendants failed to pay wages to Plaintiff and the Plaintiff Class for the time they actually spent

26   driving the extra miles.

27        148.    With respect to all miles actually driven, Defendants have intentionally and

28   improperly failed to make payment of wages to Plaintiff and the Plaintiff Class in accordance with

rates as designated by statute and/or contract. Defendants' conduct violates California Labor Code §§ 221 and 223.

149.   Defendants owed and still owe Plaintiff and the Plaintiff Class wages pursuant to the California Labor Code in amounts to be determined at trial for the hours worked during the relevant time period.

150.   Plaintiff and other Class members request payment of unpaid wages below the designated rate in amounts to be determined at trial, plus interest, attorneys' fees and costs, against Defendants in a sum as provided by the Labor Code and/or other statutes.

151.   Plaintiff and the other Class members also request relief as described below.

## SEVENTH CAUSE OF ACTION

### QUANTUM MERUIT/UNJUST ENRICHMENT

### [Against Defendant Comtrak and Doe Defendants]

152.   Plaintiff hereby incorporates by reference each and every one of the allegations contained in the preceding paragraphs as if the same were fully set forth herein.

153.   Plaintiff and the Plaintiff Class conferred a benefit upon Defendants by working on their behalf without compensation, including but not limited to, time spent driving miles for which Drivers were not compensated and working hours for which they were not compensated.

154.   Defendants had an appreciation or knowledge of the benefit conferred by Plaintiff and the Plaintiff Class.

155.   Defendants accepted and retained the benefit under circumstances as to make it inequitable for Defendants to retain the benefit without payment of its value.

## EIGHTH CAUSE OF ACTION

### FAILURE TO PROVIDE MEAL PERIODS

### [Against Defendant Comtrak and Doe Defendants]

156.   Plaintiff hereby incorporates by reference each and every one of the allegations contained in the preceding paragraphs as if the same were fully set forth herein.

157.   Plaintiff is informed and believes and thereon alleges, that Plaintiff and the Plaintiff Class regularly worked more than five (5) hours per shift and were entitled to a meal period of not

less than thirty (30) minutes without duty.  Plaintiff is further informed and believes, and thereon alleges, that Plaintiff and the Plaintiff Class regularly worked more than ten (10) hours per shift and were entitled to a second meal period of not less than thirty (30) minutes without duty.

158.   Nevertheless, Plaintiff is informed and believes, and thereon alleges, that Defendants routinely failed to provide Plaintiff and the Plaintiff Class with such meal periods without duty, notwithstanding the fact that Plaintiff and the Plaintiff Class had not waived their right to the same. Thus, Defendants failed to provide Plaintiff and the Plaintiff Class with meal periods required by California Labor Code §§ 226.7, 512, 516 and IWC Wage Order, number 9 § 11 and categorically failed to pay any and all meal period wages due.

159.   Plaintiff and the Plaintiff Class seek damages pursuant to California Labor Code § 226.7(b) and IWC Wage Order, number 9 §11(D), in the amount of one additional hour of pay at the regular rate for each work day that the meal period is/was not provided to Plaintiff and any member of the Plaintiff Class, the cumulative sum of which is to be determined at trial.

160.   Plaintiff and the Plaintiff Class further seek penalties pursuant to California Labor Code § 558(a) for Defendants' failure to provide such meal periods.

161.   Plaintiff and the Plaintiff Class seek prejudgment interest on all amounts recovered herein pursuant to California Labor Code §§ 218.6, 1194(a) and the California Civil Code §§ 3287(b) and 3289.

### NINTH CAUSE OF ACTION

### FAILURE TO PROVIDE REST PERIODS

### [Against Defendant Comtrak and Doe Defendants]

162.   Plaintiff hereby incorporates by reference each and every one of the allegations contained in the preceding paragraphs as if the same were fully set forth herein.

163.   Plaintiff is informed and believes, and thereon alleges, that Plaintiff and the Plaintiff Class were entitled to a paid rest period of not less than ten (10) minutes without duty for each and every four (4) hours worked during the workday.

164.   Nevertheless, Plaintiff is informed and believes, and thereon alleges, that Defendants routinely failed to provide Plaintiff and the Plaintiff Class with such paid rest periods

1  without duty, notwithstanding the fact that Plaintiff and the Plaintiff Class had not waived their

2  right to the same. Thus, Defendants failed to provide Plaintiff and the Plaintiff Class with rest

3  periods required by California Labor Code §§ 226.7, 512, and 516, IWC Wage Order, number 9 §

4  12 and categorically failed to pay any and all meal period wages due.

5        165.    Plaintiff and the Plaintiff Class seek damages pursuant to California Labor Code

6  § 226.7(b) and IWC Wage Order, number 9 § 12(B), in the amount of one additional hour of pay

7  at the regular rate for each work day that the rest period is/was not provided to Plaintiff and any

8  member of the Plaintiff Class, the cumulative sum of which is to be determined at trial.

9        166.    Plaintiff and the Plaintiff Class further seek penalties pursuant to California Labor

10  Code § 558(a) for Defendants' failure to provide such rest periods.

11        167.    Plaintiff and the Plaintiff Class seek prejudgment interest on all amounts recovered

12  herein pursuant to California Labor Code §§ 218.6 and 1194(a) and the California Civil Code

13  §§ 3287(b) and 3289.

14  **TENTH CAUSE OF ACTION**

15  **FAILURE TO TIMELY FURNISH ACCURATE ITEMIZED WAGE STATEMENTS**

16  **[Against Defendant Comtrak and Doe Defendants]**

17        168.    Plaintiff hereby incorporates by reference each and every one of the allegations

18  contained in the preceding paragraphs as if the same were fully set forth herein.

19        169.    Defendants paid Plaintiff and the Plaintiff Class on a piece-rate basis, typically on

20  an activity and per-mile basis, with some variation thereon. However, as noted above, Defendants

21  failed to pay Plaintiff and the Plaintiff Class for all hours worked by Plaintiff and the Plaintiff

22  Class during the relevant time period.

23        170.    California Labor Code § 226(a) and IWC Wage Order, number 9 § 7(B) require

24  employers to furnish each employee with a statement itemizing, among other things, the total

25  hours worked by the employee, on a semi-monthly basis or at the time of each payment of wages.

26        171.    Defendants knowingly and intentionally failed to furnish Plaintiff and members of

27  the Plaintiff Class with timely, itemized statements showing the total hours worked, as required by

28  California Labor Code § 226(a) and IWC Wage Order, number 9 § 7(B).

172.     Plaintiff is informed and believes, and thereon alleges, that Defendants knowingly and intentionally failed to furnish Plaintiff and the Plaintiff Class with timely, itemized statements showing (a) total hours worked, (b) gross wages earned, (c) all deductions, and/or (d) all applicable hourly rates in effect during each respective pay period and the corresponding number of hours worked at each hourly rate by each respective individual.

173.     Plaintiff is informed and believes, and thereon alleges, that Defendants did not maintain accurate business records pertaining to the total hours worked for Defendants by Plaintiff and the Plaintiff Class.

174.     As a result of not having kept accurate records, Plaintiff and the Plaintiff Class suffered injuries in the form of confusion over whether they received all wages owed to them, and difficulty and expense in reconstructing pay records in addition to other injuries which may come to light during the discovery process.

175.     Plaintiff and the Plaintiff Class herein seek damages and penalties pursuant to California Labor Code § 226(e) for Defendants violations of California Labor Code § 226(a).

176.     Plaintiff and the Plaintiff Class further seek preliminary and permanent injunctive relief and an award of reasonable attorneys' fees and costs pursuant to California Labor Code § 226(h).

177.     Plaintiff and the Plaintiff Class also request relief as described below.

## ELEVENTH CAUSE OF ACTION

### FOR WAITING TIME PENALTIES

#### (On behalf of the Former Drivers Subclass)

#### [Against Defendant Comtrak and Doe Defendants]

178.     Plaintiff hereby incorporates by reference each and every one of the allegations contained in the preceding paragraphs as if the same were fully set forth herein.

179.     California Labor Code § 203 provides that if an employer willfully fails to pay compensation promptly upon discharge, as required by California Labor Code § 201 or 202, then the employer is liable for waiting time penalties in the form of continued compensation of up to thirty (30) work days.

180.     Plaintiff is informed and believes, and thereon alleges, that Defendants, in violation of California Labor Code § 203, consistently and willfully failed to timely pay not only him, but all Former Drivers Subclass members, all wages due and owing to said Subclass members at the time of termination of employment, including basic minimum wages and premium pay due for meal period and rest period wages as set forth hereinabove.

181.     Plaintiff, on behalf of himself and the Former Drivers Subclass, seeks the penalties to which he is entitled pursuant to California Labor Code § 203, in the amount of each Former Drivers Subclass members' daily wage multiplied by thirty (30) days, the exact amount of which is to be determined at trial.

## TWELFTH CAUSE OF ACTION

### CALIFORNIA BUSINESS AND PROFESSIONS CODE SECTION 17200, *ET SEQ.*

### [Against Defendant Comtrak and Doe Defendants]

182.     Plaintiff hereby incorporates by reference each and every one of the allegations contained in the preceding paragraphs as if the same were fully set forth herein.

183.     Beginning in or around 2008 and continuing to the present, Defendants, and each of them, committed acts of unfair competition as defined by California Business and Professions Code § 17200, *et. seq.*, by engaging in the following unlawful, unfair and fraudulent business acts and practices in the State of California:

a.   Misrepresenting to Plaintiff and the Plaintiff Class the true nature of their employment status.

b.   Intentionally misclassifying Plaintiff and the Plaintiff Class as independent contractors.

c.   Intentionally and improperly treating Plaintiff and the Plaintiff Class as independent contractors when, in fact, they were employees.

d.   Failing to pay Unemployment Insurance taxes as required by the California Unemployment Insurance Code § 976;

e.   Failing to pay Employment Training Fund taxes as required by the California Unemployment Insurance Code § 976.6;

f. Failing to withhold State Disability Insurance taxes as required by the California Unemployment Insurance Code § 984;

g. Failing to withhold State income taxes as required by the California Unemployment Insurance Code § 13020;

h. Failing to provide workers' compensation as required by California Labor Code § 3700;

i. Failing to indemnify Plaintiff and the Plaintiff Class for employment-related business expenses and losses;

j. Improperly and unlawfully making deductions from Plaintiff's and the Plaintiff Class' compensation for work-related expenses and losses not attributable to Plaintiff's and  the Plaintiff Class' dishonest or willful act or gross negligence, as described above;

k. Failing to comply with Written Lease requirements pursuant to 49 C.F.R. 376.12, including but not limited to §§ 376(e), 376(j)(3) and 376(k)(3);

l. Coercing and/or compelling Plaintiff and the Plaintiff Class to purchase necessary equipment from Defendants and allied companies;

m. Failing to pay minimum wage compensation to Plaintiff and the Plaintiff Class for all hours worked;

n. Failing to pay minimum wage compensation to Plaintiff and the Plaintiff Class for actual miles driven;

o. Failing to pay wages at the designated rate to Plaintiff and the Plaintiff Class for all hours worked;

p. Failing to pay wages at the designated rate to Plaintiff and the Plaintiff Class for actual miles driven;

q. Knowingly accepting and retaining a benefit conferred upon Defendants by Plaintiff and the Plaintiff Class;

r. Failing and refusing to provide meal periods to Plaintiff and the Plaintiff Class;

s. Defendants failed and refused to provide rest periods to Plaintiff and the Plaintiff

Class;

t.   Defendants failed to provide accurate itemized wage statements to Plaintiff and the Plaintiff Class; and

u.   Failing and refusing to maintain payroll records showing the actual hours worked each day by Plaintiff and the Plaintiff Class.

184.   As a direct and proximate result of Defendants' unlawful, unfair, and/or fraudulent acts and practices described herein, Defendants have received and continue to hold ill-gotten gains belonging to Plaintiff and the Plaintiff Class. As a direct and proximate result of Defendants' unlawful business practices, Plaintiff and the Plaintiff Class have suffered economic injuries including, but not limited to, out-of-pocket business expenses, unlawful deductions from compensation, loss of minimum wage compensation, compensation for missed meal and rest periods, and waiting time penalties.

185.   Through Defendants' use of such unlawful, unfair, and/or fraudulent acts and practices, Defendants have gained an unfair advantage over Defendants' competitors.

186.   Plaintiff and the Plaintiff Class seek full restitution on account of the economic injuries they have suffered, along with disgorgement of ill-gotten gains from Defendants as necessary and according to proof, to restore any and all monies withheld, acquired and/or converted by Defendants by means of the unlawful, unfair and fraudulent business practices complained of herein.

187.   Plaintiff and the Plaintiff Class seek appointment of a receiver, as necessary, to oversee said restitution, including all wages earned and unpaid, including interest thereon.

188.   Further, if Defendants are not enjoined from engaging of the unlawful, unfair and fraudulent conduct described above, Defendants will continue unabated in their conduct, which will result in continued irreparable injury to members of the public, including, but not limited to members of the Plaintiff Class who currently work for Defendants, and for which there is no adequate remedy at law. Thus, Plaintiff and the Plaintiff Class request that the Court issue a preliminary and permanent injunction prohibiting Defendants from engaging in the foregoing conduct.

189.   Plaintiff and the Plaintiff Class also request relief as described below.

**<u>PRAYER FOR RELIEF</u>**

WHEREFORE, Plaintiffs pray as follows:

a.   An order certifying the Class herein, appointing the named Plaintiff as the class representative of all others similarly situated and appointing the law firm representing the named Plaintiff as counsel for members of the Class;

b.   An order declaring that Defendants misclassified Plaintiff and the Plaintiff Class as "independent contractors," when in fact they were Defendants' employees;

c.   An order awarding Plaintiff and the Plaintiff Class compensatory damages;

d.   A temporary, preliminary and/or permanent order for injunctive relief requiring Defendants to: (1) comply with Written Lease requirements pursuant to 49 C.F.R. 376.12; (2) discontinue from engaging in the acts complained of herein; and (3) undertake an accounting under administration of Plaintiff and/or the receiver and subject to court review, to determine the amount to be returned by Defendants, and the amounts to be refunded to Plaintiff and the Plaintiff Class owed monies by Defendants;

e.   An order requiring imposition of a constructive trust and/or disgorgement of Defendants' ill-gotten gains to pay restitution to the Plaintiff and the Plaintiff Class and to restore to the Plaintiff and the Plaintiff Class all funds acquired by means of any act or practice declared by this Court to be an unlawful, fraudulent or unfair business act or practice, a violation of laws, statutes or regulations, or constituting unfair competition;

f.   Pre-judgment and post-judgment interest;

g.   Reasonable attorneys' fees pursuant to the California Labor Code §§ 1194 and 2802 and penalties;

h.   Costs of this suit; and

i.   Such other and further relief as the Court may deem necessary or appropriate.

COMPLAINT

1    DATED: January 25, 2013                    **MARLIN & SALTZMAN, LLP**

2                                               */s/ Christina A. Humphrey*

3                                               By: _____

4                                                    Christina A. Humphrey, Esq.
                                                     Attorneys for Plaintiff

5

6                          **DEMAND FOR JURY TRIAL**

7          Plaintiff hereby demands trial of Plaintiff's and the Plaintiff Class' claims by jury to the

8    extent authorized by law.

9

10   DATED: January 25, 2013                    **MARLIN & SALTZMAN, LLP**

11                                              */s/ Christina A. Humphrey*

12                                              By: _____

13                                                   Christina A. Humphrey, Esq.
                                                     Attorneys for Plaintiff

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COMPLAINT