UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SALVADOR ROBLES, individually and on behalf of others similarly situated,<br><br>    Plaintiffs,<br><br>    v.<br><br>COMTRAK LOGISTICS, INC., a Delaware Corporation; DOES 1 through 10, inclusive,<br><br>    Defendants. | No.  2:13-cv-00161-JAM-AC<br><br>**ORDER DENYING DEFENDANT'S MOTION TO DISMISS** |

    Defendant Comtrak Logistics, Inc. ("Defendant") moves to dismiss (Doc. #25) the first amended complaint ("the FAC") (Doc. #24).  The FAC states twenty-three causes of action for violations of the California Labor Code ("Labor Code") and the California Department of Industrial Relations' Industrial Welfare Commission's Industry and Occupation Orders for the Transportation Industry ("IWC Wage Orders"), Cal. Code Regs. tit. 8, § 11090 (2001).  Defendant contends each cause of action is preempted by the Federal Aviation Administration Authorization Act of 1994 ("FAAA Act" or "FAAAA"), 49 U.S.C. § 14501(c)(1).  For the reasons that follow, Defendant's motion is DENIED.

        I.    FACTUAL ALLEGATIONS AND PROCEDURAL BACKGROUND

    Defendant is a major provider of full dray truckload

transportation services across the country. FAC ¶ 5. Plaintiff Salvador Robles ("Plaintiff") is a former driver for Defendant who was initially classified as an independent contractor and later hired as an employee driver by Defendant. Id. ¶ 3.

Plaintiff alleges Defendant retained and exercised significant and pervasive control over all of its drivers, thereby making those drivers Defendant's employees under California law. FAC ¶ 6. Plaintiff claims Defendant has misclassified these drivers as independent contractors in order "to avoid various duties and obligations owed to employees" under the Labor Code and the IWC Wage Orders. FAC ¶ 1.

The FAC states the first twelve causes of action ("IC Claims") as a class action on behalf of Plaintiff and a class of drivers who (a) signed an independent contractor and/or equipment lease contract with Defendant; (b) were assigned to an operating terminal in California; and (c) were residents of California ("the Class"). The claims brought on behalf of the Class are: (1) declaratory relief, seeking a declaration that Defendant unlawfully misclassified members of the Class as independent contractors; (2) reimbursement of business expenses based on violations of Labor Code § 2802 and IWC Wage Order #9, §§ 8-9; (3) & (4) failure to pay minimum wage pursuant to California law for actual miles driven and certain other hours worked, including but not limited to during "waiting time," inspections, and fueling; (5) & (6) failure to pay wages in accordance with the designated wage scale in violation of Labor Code §§ 221, 223; (7) quantum meruit/unjust enrichment; (8) failure to provide or pay wages required for meal periods; (9) failure to provide paid

1   rest periods; (10) failure to timely provide itemized wage
2   statements; (11) failure to timely pay compensation due and owing
3   upon discharge; (12) violations of California's Unfair
4   Competition Law, Business and Professions Code § 17200, et seq.
5   ("UCL").  These claims involve obligations owed by an employer to
6   an employee; therefore, each of these causes of action relies on
7   the premise that Defendant improperly classified the drivers as
8   independent contractors when legally they should have been
9   treated as employees under California law.
10       In addition, the FAC restates the same claims found in the
11  second through twelfth causes of action on behalf of Plaintiff
12  individually for labor and wage violations during his time
13  working for Defendant in which he was classified as an employee.
14  These eleven claims, the thirteenth through twenty-third causes
15  of action ("EE Claims"), allege that although Plaintiff was
16  properly classified as an employee by Defendant during the
17  relevant time period, Defendant still failed to abide by the
18  applicable provisions of the Labor Code and the IWC Wage Orders.
19       After the instant motion and responsive briefings were
20  filed, the Court exercised its discretion to stay the action
21  (Doc. #36) on August 5, 2013, pending resolution of appeals in
22  two federal district court cases in California regarding
23  preemption of California law by the FAAA Act.  Upon the Ninth
24  Circuit's resolution of the appeals, the Court lifted the stay
25  (Doc. #39) on July 25, 2014.  Defendant requested leave to file
26  supplemental briefing (Doc. #41); the Court granted the motion
27  (Doc. #42) on July 30, 2014, further allowing Plaintiff to file a
28  responsive brief.  Supplemental briefing was submitted by

1  Defendant (Doc. #43) on August 20, 2014, and by Plaintiff (Doc.
2  #50) on September 3, 2014.  Both parties have filed multiple
3  notices of recent decisions (Doc. #26, 34, 51-53) they believe
4  are relevant to the Court's resolution of the current motion,
5  most recently on October 29, 2014.

## II.  OPINION

### A.  Request for Judicial Notice

Plaintiff requests the Court take notice (Doc. #30) of three documents, attached as Exhibits "A", "B" and "C" (Doc. #29-2, 29-3, 29-4) to the Declaration of Christina Humphrey (Doc. #29-1).

Generally, the Court may not consider material beyond the pleadings in ruling on a motion to dismiss for failure to state a claim.  The exceptions are material attached to, or relied on by, the complaint so long as authenticity is not disputed, or matters of public record, provided that they are not subject to reasonable dispute.  E.g., Sherman v. Stryker Corp., 2009 WL 2241664 at *2 (C.D. Cal. Mar. 30, 2009) (citing Lee v. City of Los Angeles, 250 F.3d 668, 688 (9th Cir. 2001) and Fed. R. Evid. 201).

Exhibit A is a copy of the House of Representatives Conference Report 103-677, discussing the intended application of the FAAA Act.  Exhibit B is a copy of President Clinton's Statement on Signing the FAAA Act.  As the Court may properly take notice of the legislative history of relevant statutes, Plaintiff's request is GRANTED as to these two documents.  Louis v. McCormick & Schmick Rest. Corp., 460 F. Supp. 2d 1153, 1155 (C.D. Cal. 2006)

Exhibit C is a Department of Transportation notice in which

4

1    the Federal Motor Carrier Safety Administration ("FMCSA") rejects
2    a petition for preemption.  The document discusses whether
3    California meal and rest break laws should be preempted as
4    improper regulations "on commercial motor vehicle safety."  The
5    Court does not find the decision of the FMCSA to be relevant to
6    the issue presently before it.  Plaintiff's request for notice is
7    therefore DENIED as to this document.

8        B.   Discussion

9        Defendant has moved the Court to dismiss the entire FAC.  It
10   correctly points out that the IC Claims rely on the allegation
11   that Defendant improperly classified Plaintiff and the Class as
12   independent contractors.  MTD at pp. 2-3.  Defendant argues this
13   is an "attempt by Plaintiff to dictate the terms of [Defendant's]
14   contractual relationships" with its drivers, and is thus
15   preempted by the FAAA Act.  In addition, Defendant argues the EE
16   Claims are an attempt by Plaintiff to force Defendant to "alter
17   its compensation system for company drivers and provide these
18   drivers with meal and rest breaks."  Defendant contends these
19   actions are expressly preempted by the FAAA Act.  Defendant
20   argues the Court should therefore dismiss the entire FAC with
21   prejudice.

22       1.   Legal Standard

23      Federal law may preempt state law under the supremacy clause
24   either by express provision, by implication, or by a conflict
25   between federal and state law.  <u>N.Y. Conference of Blue Cross v.</u>
26   <u>Travelers Ins.</u>, 514 U.S. 645, 655 (1995) (citations omitted).
27   The motion before the Court is based on a claim of explicit
28   preemption.  MTD at p. 6.  When addressing preemption claims,

"the question whether a certain state action is preempted by federal law is one of congressional intent.  The purpose of Congress is the ultimate touchstone." Ingersoll-Rand Co. v. McClendon, 498 U.S. 133, 137-38 (1990).  "[W]here federal law is said to bar state action in fields of traditional state regulation," it is assumed that "the historic police powers of the States were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress." Blue Cross, 514 U.S. at 655 (citations omitted).  The Court must look to the history and context of the FAAA Act, in addition to the statutory language used, in order to determine the intended scope of its preemption clause.

          2.   History of Deregulation

In 1978, Congress sought to deregulate the airline industry by enacting the Airline Deregulation Act of 1978 ("ADA"), now codified at 49 U.S.C. § 41713.  "In order to 'ensure that the States would not undo federal deregulation with regulation of their own,' that Act 'included a pre-emption provision' that said 'no State . . . shall enact or enforce any law . . . relating to rates, routes, or services of any air carrier.'" Rowe v. New Hampshire Motor Transp. Ass'n, 552 U.S. 364, 368 (2008) ("Rowe") (quoting Morales v. Trans World Airlines, Inc., 504 U.S. 374, 378 (1992)).

In 1980, Congress sought to similarly deregulate the trucking industry by enacting the Motor Carrier Act of 1980.  As initially drafted however, the statute did not contain a preemption provision.  By 1994, Congress noted that "41 jurisdictions regulate[d], in varying degrees, intrastate prices,

1  routes and services of motor carriers." H.R. Conf. Rep. 103-677
2  at 86 (1994) (Humphrey Decl., Exh. A). The report identified the
3  ten jurisdictions it found did not so regulate: Alaska, Arizona,
4  Delaware, the District of Columbia, Florida, Maine, Maryland, New
5  Jersey, Vermont and Wisconsin. Id. The report identified the
6  typical forms of regulation as "entry controls, tariff filing and
7  price regulation, and types of commodities carried." Id.
8      In response to this growing trend in the trucking industry,
9  Congress passed the FAAA Act, which created a preemption
10 provision for the Motor Carrier Act *nearly* identical to that of
11 the ADA. Rowe, 552 U.S. at 368. The FAAA Act provides that a
12 state "may not enact or enforce a law, regulation, or other
13 provision having the force and effect of law related to a price,
14 route, or service of any motor carrier . . . with respect to the
15 transportation of property." 49 U.S.C. § 14501(c)(1).
16     Due to the similarity in the language of the preemption
17 provisions, courts have relied on ADA case law in deciding
18 preemption cases under the Motor Carrier Act. See Rowe, 552 U.S.
19 at 370 ("[W]e follow Morales in interpreting similar language in
20 the 1994 Act before us here."). However, in one of its most
21 recent opinions involving the FAAA Act, the Supreme Court found
22 that Congress' addition of the phrase "with respect to the
23 transportation of property" to the ADA's preemption clause
24 language "massively limits the scope of preemption ordered by the
25 FAAAA." Dan's City Used Cars, Inc. v. Pelkey, 133 S. Ct. 1769,
26 1778 (2013) ("Dan's City"). "[F]or purposes of FAAAA preemption,
27 it is not sufficient that a state law relates to the 'price,
28 route, or service' of a motor carrier in any capacity; the law

must also concern a motor carrier's 'transportation of property.'" Id. at 1778-79. Although a law that only indirectly affects the price, route, or service of a motor carrier can be preempted, the FAAAA "does not preempt state laws affecting carrier prices, routes, and services 'in only a "tenuous, remote, or peripheral . . . manner."'" Id. (quoting Rowe, 552 U.S. at 371).

### 3. IC Claims

Defendant contends the IC Claims are an "attempt by Plaintiff to dictate the terms of [Defendant's] contractual relationships with its owner-operators" and are thus "preempted by the FAAA Act."

In support of this contention, Defendant relies heavily on American Trucking Associations, Inc. v. City of Los Angeles, 559 F.3d 1046 (9th Cir. 2009) ("ATA I") and American Trucking Associations, Inc. v. City of Los Angeles, 660 F.3d 384 (9th Cir. 2011) ("ATA II"), as amended (Oct. 31, 2011) (rev'd in part sub nom. Am. Trucking Associations, Inc. v. City of Los Angeles, 133 S. Ct. 2096 (2013)). MTD at pp. 6, 8, 12-14, 16, 19, 22-24. However, as Plaintiff points out, these cases are inapposite. In the ATA action, the defendant trucking association challenged concession agreements that the Port of Los Angeles was requiring motor carriers to enter into in order to access the port. ATA II, at 390. The provision Defendant seeks to analogize to in ATA I and ATA II required the motor carriers to "cease using independent owner-operators." Id. at 407. Here, Plaintiff's IC Claims involve the illegal misclassification of an employee driver as an independent contractor pursuant to California law.

8

The Court agrees with Plaintiff that Defendant's arguments relying on these cases are misplaced. The FAC does not seek to *require* Defendant to use only employee drivers rather than independently contracted drivers as attempted in the ATA action. Rather, it seeks to hold Defendant accountable for its obligation to properly classify its drivers. The Court finds the primary issue presently before the Court is whether the California laws governing the classification of workers as either employees or independent contractors is enforceable as to Defendant's business here in California, or whether it is preempted by the FAAA Act.

Defendant also spends a portion of its motion arguing that the decision in Californians For Safe & Competitive Dump Truck Transportation v. Mendonca, 152 F.3d 1184, 1189 (9th Cir. 1998) is inapposite. MTD at pp. 21-24. In Mendonca, the Ninth Circuit found the FAAA Act does not preempt California's prevailing wage law. Id. It found that although the wage law was, in a sense, related to and increased the defendant trucking company's prices, the effect was only indirect and tenuous, and therefore did not fall within the FAAA Act's preemptive range. Id. Defendant argues "the reasoning of Mendonca was largely invalidated" by the United States Supreme Court's decision in Rowe, 552 U.S. at 370. However, earlier this year, the Ninth Circuit specifically held that Rowe did not "call into question [the Ninth Circuit's] past FAAAA cases, such as Mendonca." Dilts v. Penske Logistics, LLC, 769 F.3d 637, 642-45 (9th Cir. 2014). It went on to state that Rowe "simply reminds us that, whether the effect is direct or indirect, 'the state laws whose effect is forbidden under federal law are those with *significant* impact on carrier rates, routes,

9

or services.'" Id. (quoting Rowe, 552 U.S. at 375) (emphasis in original).

Defendant further argues Mendonca is inapplicable because the law implicated there only affected the economic cost for motor carriers to do business in California. MTD at pp. 22-23. Defendant argues the outcome under state law that Plaintiff seeks here would "require" it to use only employee drivers, "the very type of conduct-regulating state action that the FAAA Act forbids." Id. Again, Defendant misstates the FAC, as it does not seek to *require* Defendant to employ a certain business model. Instead, it simply seeks to hold Defendant accountable for following generally applicable labor laws in California.

The reasoning in Mendonca and Dan's City was recently considered by the California Supreme Court in People ex rel. Harris v. Pac Anchor Transp., Inc., 59 Cal. 4th 772, 784-86 (2014), a case the Court finds most analogous to the current action. In Harris, the State of California brought a UCL action against a trucking company and its owner for misclassifying drivers as independent contractors and for other alleged violations of California's labor laws. Id. at 775-76. The government's claim was based on violations of the Labor Code and IWC Wage Orders nearly identical to those alleged by Plaintiff here. The defendants contended the FAAA Act preempted the government's claims. Id. at 784-86. Just as Defendant has done in the current motion, the defendants in Harris argued the claim would "significantly affect motor carrier prices, routes, and services because its application [would] prevent their using independent contractors, potentially affecting their prices and

services." Id.  The government argued the claim was brought because defendants sought to evade their legal responsibilities and to "compete unfairly, by misclassifying their truck drivers as independent contractors."  Id.

The Harris court reasoned that the holding in Dan's City "strongly supports a finding that California labor and insurance laws and regulations of general applicability are not preempted" under the FAAA Act.  Id. at 784-86.  It found the laws underlying the government's claims make no reference to motor carriers or the transportation of property, rather the laws "regulated employer practices in all fields and simply require motor carriers to comply with the labor laws that apply to the classification of their employees."  Id.  The court found the government's action to enforce the labor laws of California was not an attempt to restrict the defendants' use of independent contractors.  Rather, it found the government was simply contending "that if defendants pay individuals to drive their trucks, they must classify these drivers appropriately and comply with generally applicable labor and employment laws."  Id.

The Harris court noted: "Mendonca concluded that California's generally applicable prevailing wage laws were not preempted by the FAAAA in part because several states Congress identified as not having laws regulating interstate trucking had prevailing wage laws in place at the time the FAAAA was enacted."  Id.  The court then went on to observe that "eight out of the 10 jurisdictions identified in Mendonca had generally applicable laws governing when a worker is an independent contractor (or the equivalent) and when a worker is an employee."  Id. (citing

11

Alaska Stat. § 23.20.525; Ariz. Rev. Stat. § 23-902; Del. Code Ann. tit. 19, § 3302; Fla. Stat. § 440.02; Me. Rev. Stat. Ann. tit. 26, § 1043; N.J. Stat. Ann. § 43.21-19; Vt. Stat. Ann. tit. 21, § 1301; Wis. Stat. §§ 102.07, 108.02.); see also H.R. Conf. Rep. 103-677 at pp. 86-87. This led the court to conclude that "even though the [] action may have some indirect effect on defendants' prices or services, that effect is too tenuous, remote, [and] peripheral . . . to have pre-emptive effect." Id. (internal citations and quotation marks omitted).

In its supplemental brief, Defendant argues Harris is inapplicable and wrongly decided. Def. Supp. Brief (Doc. #43) at pp. 9-10. Although the California Supreme Court's interpretation of federal law is not binding, the Court finds the reasoning in Harris persuasive and concurs in its holding that generally applicable laws regarding the classification of employees are not the type of regulation Congress was attempting to target in the passage of the FAAA Act, as they do not seek to regulate the "intrastate prices, routes and services of motor carriers." See H.R. Conf. Rep. 103-677 at 86.

A similar conclusion was reached in Schwann v. FedEx Ground Package Systems, Inc., No. CIV.A. 11-11094-RGS, 2013 WL 3353776, at *3 (D. Mass. 2013). There, the United States District Court for the District of Massachusetts found the Massachusetts law identifying the grounds under which a worker can be classified as an independent contractor, "the Independent Contractor Statute," was not preempted by the FAAA Act. Id. Applying the reasoning laid out by the United States Supreme Court in Dan's City, the Schwann court held: "Even if the Independent Contractor Statute

prevents FedEx from implementing its preferred business model of classifying its delivery drivers as independent contractors (there is no reason to believe that it does not), this does not create a sufficient relationship to its prices, routes, or services to trigger preemption." Id. at *4.  The court found the statute had nothing to do with the transportation of property, rather the statue "simply explains to businesses . . . who operate in [Massachusetts] when a worker must be paid as an employee." Id. at *3.

The Court finds the outcomes in both Harris and Schwann appropriately effectuate Congress' purpose in passing the FAAA Act and avoid the perverse application of the law to circumvent basic labor protections.  Plaintiff's action does not seek to prevent Defendant from utilizing independent contractors in its business model, but merely to comply with the applicable labor laws of the State of California when compensating and classifying its workers.  The Court finds the FAAA Act does not preempt California's laws regarding the classification of employees and therefore does not preempt Plaintiff's IC Claims.

In its supplemental brief, Defendant discusses at length a recent Supreme Court Case, Northwest, Inc. v. Ginsberg, 134 S. Ct. 1422 (2014).  Def. Supp. Brief at pp. 1-6.  Defendant contends the case is "directly on point in this case and compels a finding of FAAA Act preemption."  However, as pointed out by Plaintiff, Ginsberg has little to no bearing on this case. Plaintiff Supp. Brief (Doc. #50) at pp. 4-5.  The issues addressed in Ginsberg were whether the ADA preempts a claim for breach of the implied covenant of good faith and fair dealing

13

1  under Minnesota law.  134 S. Ct. at 1426.  Defendant strains to
2  connect the reasoning therein to its contention here that
3  Defendant should not be subjected to California's generally
4  applicable labor laws.
5      Dilts v. Penske Logistics, LLC, supra, explicitly
6  distinguished generally applicable background regulations such as
7  California's labor laws that are "several steps removed from
8  prices, routes, or services" and those that directly affect the
9  price of services such as the law being applied in Ginsberg.  769
10 F.3d at 646.  In support of this reasoning, the Dilts court cites
11 decisions in other circuits making similar distinctions.  Id.
12 (citing S.C. Johnson & Son, Inc. v. Transp. Corp. of Am., 697
13 F.3d 544, 558 (7th Cir. 2012) (labor laws not preempted by ADA
14 and FAAA Act because they "operate one or more steps away from
15 the moment at which the firm offers its customer a service for a
16 particular price") and DiFiore v. Am. Airlines, Inc., 646 F.3d
17 81, 88 (1st Cir. 2011) (differentiating law regulating how an
18 airline charges customers from a law that would regulate "merely
19 how the airline behaves as an employer or proprietor")).  The
20 Court finds no merit in Defendant's position.
21           4.    Meal and Rest Break Laws
22      Defendant dedicates a significant portion of its motion
23 specifically attacking the application of California's Meal and
24 Rest Break laws to the trucking industry, citing a number of
25 federal district court opinions in California.  MTD at pp. 1-3,
26 9-11, 15-21.  The Court therefore addresses these specific
27 provisions.
28      As stated above, the Court stayed the action pending the

14

1  resolution of several cases addressing this very issue.  After
2  discussing the principles underlying FAAA Act preemption, the
3  Ninth Circuit held:

> California's meal and rest break laws plainly are not the sorts of laws "related to" prices, routes, or services that Congress intended to preempt.  They do not set prices, mandate or prohibit certain routes, or tell motor carriers what services they may or may not provide, either directly or indirectly.  They are "broad law[s] applying to hundreds of different industries" with no other "forbidden connection with prices[, routes,] and services."  Air Transp. Ass'n [of America v. City & Cnty. of San Francisco], 266 F.3d [1064,] 1072 [(9th Cir. 2001)].

10 Dilts, 769 F.3d at 647.

11      In supplemental briefing, Defendant attempts to avoid the
12 effect of this holding by observing that Dilts involved employee
13 drivers and not independent contractors.   Def. Supp. Brief at
14 pp. 1, 6-9.  The Court finds this attempt to distinguish the
15 cases entirely unpersuasive, especially in light of the Court's
16 holding above that California's laws regarding the classification
17 of employees and independent contractors are not preempted by the
18 FAAA Act.

19      Defendant also argues the reasoning in ATA I and ATA II was
20 not considered in the Dilts opinion and should still control the
21 outcome here, where Plaintiff is attempting to mandate how
22 Defendant provides services.  First, contrary to this assertion,
23 the Ninth Circuit repeatedly cited to and relied upon the ATA
24 cases in its opinion.  See Dilts, 769 F.3d at 644, 646-47, 649.
25 In addition, the Court again rejects Defendant's assertion that
26 the FAC seeks to *mandate* the use of employee drivers over
27 independent contractors.

28      Defendant further argues that the defendant in Dilts "did

15

not face a 'patchwork' of hour and break laws because the employees drove exclusively within California and were not covered by other state laws or federal hours-of-service regulations." Def. Supp. Brief at p. 8. As pointed out by Plaintiff, the Ninth Circuit specifically clarified that its finding was that California's meal and rest break laws are not preempted as <u>generally applied</u> to motor carriers and did not rely on the intrastate nature of the plaintiffs' work in so holding. Dilts, at 648 n.2. The court expressly concluded that:

> [A]pplying California's meal and rest break laws to motor carriers would not contribute to an impermissible "patchwork" of state-specific laws, defeating Congress' deregulatory objectives. The fact that laws may differ from state to state is not, on its own, cause for FAAAA preemption. In the preemption provision, Congress was concerned only with those state laws that are significantly "related to" prices, routes, or services. A state law governing hours is, for the foregoing reasons, not "related to" prices, routes, or services and therefore does not contribute to "a patchwork of state *service-determining* laws, rules, and regulations." Rowe, 552 U.S. at 373 (emphasis added). It is instead more analogous to a state wage law, which may differ from the wage law adopted in neighboring states but nevertheless is permissible. Mendonca, 152 F.3d at 1189.

Dilts, 769 F.3d at 647-48.

        5.    <u>EE Claims</u>

Defendant contends Plaintiff's EE Claims are "inextricably intertwined" with the IC Claims, and for the same reasons are likewise preempted. MTD at p. 24. Defendant does not cite any additional support for its attack on the EE Claims outside of that used in its arguments against the IC Claims. As the Court has found the IC Claims are not preempted, Defendant's contention that the EE Claims are preempted for similar reasons is also rejected. Defendant does briefly characterize these claims as

impermissible attempts to dictate how Defendant must compensate its drivers and when they must be provided with meal and rest breaks.  The Ninth Circuit has already clearly determined that wage laws and meal and rest break regulations are not preempted by the FAAA Act.  See Dilts, 769 F.3d at 646-48; Mendonca, 152 F.3d at 1189.

      6.   Summary

The Court finds Defendant's characterization of this action as an attempt to mandate the precise contours of Defendant's provision of services and bind it to carry on its business in a limited way to be misplaced.  The Court also finds ample support in the controlling United States Supreme Court and Ninth Circuit precedent for its conclusion that Plaintiff's claims are not preempted.  Even if the state laws the FAC seeks to enforce may "increase or change [Defendant's] operating costs" they are "'broad law[s] applying to hundreds of different industries' with no other 'forbidden connection with prices [, routes,] and services'—that is, [they] do not directly or indirectly mandate, prohibit, or otherwise regulate certain prices, routes, or services," and thus, they are not preempted by the FAAA Act. Dilts, 769 F.3d at 647.

### III. ORDER

For the reasons set forth above, the Court DENIES Defendant's motion to dismiss.

IT IS SO ORDERED.

Dated: December 18, 2014

_____
JOHN A. MENDEZ,
UNITED STATES DISTRICT JUDGE